UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MELCHOR LIMPIN,<br><br>        Plaintiff,<br><br>v.<br><br>STATE OF CALIFORNIA, et al.,<br><br>        Defendants. | Case No.:  23-cv-037-JES-JLB<br><br>**ORDER GRANTING IFP, DISMISSING COMPLAINT & DENYING MOTION TO APPOINT COUNSEL**<br><br>**[ECF Nos. 2 and 3]** |

  On January 9, 2023, Plaintiff, proceeding *pro se*, filed a complaint alleging four causes of action against numerous defendants. Plaintiff also filed a Motion for Leave to proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a) and a Motion to Appoint Counsel. ECF Nos. 2, 3. For the reasons stated below, the Court grants Plaintiff's motion to proceed IFP, dismisses his complaint without leave to amend and denies his motion to appoint counsel as moot.

### I. Motion to Proceed IFP

  The Court first addresses Plaintiffs' motion to proceed IFP. ECF No. 2. Typically, parties instituting a civil action in a United States District Court must pay a filing fee of

$402.[1] But if granted the right to proceed IFP, a plaintiff can proceed without paying the fee. *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). It is well-settled that a party need not be completely destitute to proceed IFP. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339-40 (1948). The determination of indigency falls within the district court's discretion. *See Cal. Men's Colony v. Rowland*, 939 F.2d 854, 858 (9th Cir. 1991) (noting "Section 1915 typically requires the reviewing court to exercise its sound discretion in determining whether the affiant has satisfied the statute's requirement of indigency"), *rev'd on other grounds*, 506 U.S. 194 (1993). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (*citing Adkins*, 335 U.S. at 339).

Here, Plaintiff states that he receives $1,451 a month from social security disability, has $23 in cash, $177.54 in his checking account and has monthly expenses of $1,382.70. The Court finds that plaintiff has sufficiently shown an inability to pay the filing fee. Therefore, the Court **GRANTS** Plaintiff's request to proceed IFP (ECF No. 2).

## II.    Screening Pursuant to 28 U.S.C. § 1915(e)(2)(B)

### A. Legal Standard

A complaint filed by a plaintiff proceeding IFP is subject to screening under 28 U.S.C. § 1915(e)(2) and the court is required to review the complaint and dismiss the action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-1127 (9th Cir. 2000). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d

---

[1] In addition to the $350 statutory fee, civil litigants must pay an administrative fee of $52. *See* 28 U.S.C. § 1914(a); District Court Misc. Fee Schedule, § 14 (effective Dec. 1, 2020).

1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Rule 12(b)(6) requires that a complaint "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To pass screening, all complaints must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

### B. Background

Plaintiff sues forty-two Defendants, including the State of California, and various elected officials in their individual capacities. Plaintiff alleges violations of the Equal Protection Clause of the Fourteenth Amendment, Racketeer Influenced and Corrupt Organizations (RICO) under 18 U.S.C. §§ 1961-1964, civil rights violations under 42 U.S.C. § 1983 and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). Each of Plaintiff's causes of action derive from the implementation of California Senate Bill 88 ("SB-88") and Senate Bill 139 ("SB-139").

SB-88 and SB-139 were enacted on February 23, 2021, and July 12, 2021, respectively. SB-88 modified California Welfare & Institutions Code § 8150 and provided for a one-time stimulus payment to low-income Californians impacted by the COVID-19 emergency. S.B. 88, 2021-2022 Reg. Sess. (Cal 2021); S.B. 139, 2021-2022 Reg. Sess. (Cal 2021); Cal. Welf. & Inst. § 8150 (West 2023). The bill created the Golden State Stimulus Emergency Fund, which provided for payments in the amount of either $600 or $1,200 to a "qualified recipient." *Id*. SB-88 defined a "qualified recipient" as an individual who received the earned income tax credit for the 2020 tax year by November 15, 2021, or an individual who satisfied all of the following: filed a California income tax return on or before October 15, 2021, included their federal individual

taxpayer identification number, and had an adjusted gross income of $75,000 or less. S.B. 88, *supra*; Cal. Welf. & Inst. § 8150, *supra*. If an individual received the earned income tax credit and satisfied each of the following listed conditions above, they received a $1,200 stimulus payment. *Id.* If an individual only satisfied one of the above conditions, they received a $600 stimulus payment. *Id.* SB-88 explicitly provided that the tax credits would be available to undocumented persons as long as they met the requirements provided above. S.B. 88, *supra*.

SB-139 provided for an additional one-time stimulus payment to low-income Californians but redefined the definition of "qualified recipient" to include a specified individual who received an earned income tax credit on an individual tax return filed by February 15, 2022. S.B. 139, *supra*; Cal. Welf. & Inst. § 8150(b)(B)(3)(B)(i) (West 2023). Plaintiff takes issue with undocumented persons being eligible to receive a stimulus payment under the Golden State Stimulus. Plaintiff files these causes of action as a citizen and taxpayer of the State of California.

**C. Discussion**

**1. Plaintiff Lacks Article III Standing to File a Cause of Action**

State taxpayers have no standing under Article III to challenge state tax or spending decisions simply by virtue of their status as a taxpayer. *Arakaki v. Lingle*, 477 F.3d 1048, 1063 (9th Cir 2007). The Court has consistently denied both federal and state taxpayers standing under Article III to object to a particular expenditure of funds simply because they are taxpayers. *Id.* at 1064. To establish Article III standing, "'the [taxpayer] must be able to show ... that he has sustained ... some direct injury ... and not merely that he suffers in some indefinite way in common with people generally.'" *Doremus v. Board of Ed. Of Borough of Hawthorne*, 342 U.S. 429, 433-434 (quoting *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 345 (2006). State policymakers, no less than their federal counterparts, retain broad discretion to make "policy decisions" concerning state spending "in different ways ... depending on their perceptions of wise state fiscal policy and myriad other

circumstances." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989); *See DaimlerChrysler Corp., supra*, 547 U.S. at 346. Indeed, because state budgets frequently contain an array of tax and spending provisions, any number of which may be challenged on a variety of bases, affording state taxpayers standing to press such challenges simply because their tax burden gives them an interest in the state treasury would interpose the federal courts as "'virtually continuing monitors of the wisdom and soundness' " of state fiscal administration, contrary to the more modest role Article III envisions for federal courts. *Laird v. Tatum*, 408 U.S. 1, 15 (1972).

Plaintiff's first cause of action seeks injunctive relief and alleges that SB-88 and SB-139 and "its corresponding public welfare laws (WIC § 8150 and WIC § 8150.2) … [are] class-based discrimination against the indigent under the Equal Protection Clause of the Fourteenth Amendment." (Compl. ¶ 15). Plaintiff alleges that an undocumented person with income less than $30,000 would receive a stimulus payment in the amount of $1,200 because they have a federal individual taxpayer identification number, whereas a California citizen who has the same income of less than $30,000 would only receive a $600 stimulus payment because they have a social security number. (Compl. ¶ 4). Plaintiff alleges the public welfare laws are money laundering and that Governor Newsom devised the Golden State Stimulus program as a "scheme … to reward undocumented persons under his employ" at one of his several vineyards. (Compl. ¶¶ 32-34, 54).

It is unclear from the Complaint, but the Court assumes that the first cause of action is filed against the State of California and each of the government officials listed as defendants. Plaintiff's entire complaint makes conclusory statements. Throughout his complaint, Plaintiff fails to allege a direct injury and not merely that he suffers similarly to other taxpayers generally under the requirements of SB-88 and SB-139. Not receiving a $1,200 stimulus payment is not a direct injury. Under the requirements of SB-88 and SB-139, many taxpayers do not receive a stimulus payment at all, including those with an adjusted gross income over $75,000.

Therefore, Plaintiff lacks Article III standing and all claims are dismissed without leave to amend.

## 2. SB-88 and SB-139 Do Not Violate the Equal Protection Clause of the Fourteenth Amendment

Even if Plaintiff were to establish Article III standing, SB-88 and SB-139 do not violate the equal protection clause of the Fourteenth Amendment. In his first cause of action, Plaintiff seeks injunctive relief and alleges that SB-88 and SB-139 "intentionally discriminates against a suspect class who are indigent" and is subject to strict scrutiny review by the court. (Compl. ¶¶ 19-22). Indigent persons are not a protected, or suspect, class for purposes of equal protection: "poverty, standing alone [,] is not a suspect classification." *Harris v. McRae,* 448 U.S. 297, 323 (1980). The Supreme Court has "never held that financial need alone identifies a suspect class for purposes of equal protection analysis." *Maher v. Roe,* 432 U.S. 464, 471 (1977).

"Generally, legislation is presumed to pass constitutional muster and will be sustained if the classification drawn by the statute or ordinance is rationally related to a legitimate state interest. If the classification disadvantages a 'suspect class' or impinges a 'fundamental right,' the ordinance is subject to strict scrutiny." *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) (citing *City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439-440 (1985)). However, if the classification does not target a suspect class or impinge upon a fundamental right, the ordinance is subject to rational review. Under this standard, "the Equal Protection Clause is satisfied so long as there is a plausible policy reason for the classification, … the legislative facts on which the classification is apparently based rationally may have been considered to be true by the governmental decisionmaker, … and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992). This standard is especially deferential in the context of classifications made by complex tax laws. *Id.* "[I]n structuring internal taxation schemes 'the States have large leeway in making classifications and drawing lines which in their

judgment produce reasonable systems of taxation.'" *Id.* (citing *Williams v. Vermont,* 472 U.S. 14, 22 (1985), quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359 (1973)). A classification will not fail rational-basis review even if "it is not made with mathematical nicety or because in practice it results in some inequality." *United States v. Pickard*, 100 F. Supp. 3d 981, 1005 (E.D. Cal. 2015) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)).

SB-88 and SB-139 both provide for "[economic] relief to low-income Californians impacted by the COVID-19 emergency." S.B. 88, *supra*; S.B. 139, *supra*. That policy reason is plausible and rational. It does not render the legislation arbitrary or irrational. For those reasons, SB-88 and SB-139 survive rational review and do not violate the Equal Protection Clause of the Fourteenth Amendment.

**3. Defendants Have Immunity under the Eleventh Amendment**

Plaintiff's second, third and fourth cause of action seek to recover monetary damages against the State of California and forty-one elected officials who acted in their official capacities in enacting SB-88 and SB-139. Plaintiff seeks to bring this action against the elected officials in their individual capacities, however, this entire suit is based on the passage of SB-88 and SB-139, which was done in the official capacities of each of the elected officials.

The Eleventh Amendment bars suits against a State or its agencies in federal court for all types of relief, absent unequivocal consent by the state. *Romano v. Bible,* 169 F.3d 1182, 1185 (9th Cir.1999) (citing *Pennhurst v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). The Eleventh Amendment's jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies. *Krainski v. Nevada ex rel. Bd. of Regents of the Nevada System of Higher Educ.*, 616 F.3d 963, 967 (2010).

Eleventh Amendment immunity also shields state officials acting in their official capacity. *Id.* at 967-968. A narrow exception exists "where the relief sought is prospective in nature and is based on an ongoing violation of the plaintiff's federal

constitutional or statutory rights." *Central Reserve Life of N. Am. Ins. Co. v. Struve*, 852 F.2d 1158, 1161 (9th Cir. 1988). State officials are entitled to qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, (1982). "Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." *Krainski*, *supra*, at 968. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002).

     A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Brandon v. Holt,* 469 U.S. 464, 471 (1985). As such, it is no different from a suit against the State itself. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). See, *e.g., Kentucky v. Graham,* 473 U.S. 159, 165–166, (1985). Neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will, supra*, 491 U.S. at 70-71.

     Plaintiff may not recover monetary damages against the State of California or any of the elected officials named as defendants for violations of the Equal Protection Clause of the Fourteenth Amendment, RICO, civil rights violations under 42 U.S.C. § 1983 and conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3). The Eleventh Amendment bars such claims. Therefore, all claims against the defendants for monetary damages based on federal constitutional equal protection will be dismissed with prejudice.

     Therefore, all claims against the State of California and the forty-one state officials are all dismissed without leave to amend.

/ / /

### III. CONCLUSION

A pro se litigant must be given leave to amend his or her complaint to state a claim unless it is absolutely clear the deficiencies of the complaint cannot be cured by amendment. *See Lopez*, *supra*, 203 F.3d at 1130. However, for the reasons stated above, the Court grants Plaintiffs' Motion to Proceed IFP (**ECF No. 2)** and dismisses the Complaint with prejudice as no amendment will overcome the hurdles mentioned above. Accordingly, the Motion to Appoint Counsel (**ECF No. 3**) is denied as moot.

**IT IS SO ORDERED.**

Dated: May 2, 2023

Honorable James E. Simmons, Jr.
Unites States District Judge